UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:12-CV-323

| | |
|---|---|
| LOGAN DEVELOPERS, INC. D/B/A, ) | |
| LOGAN HOMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| HERITAGE BUILDINGS, INC., ) | |
| VIVEK SIKKA, ROBERT GARY, ) | |
| and ELIZABETH GARY, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on Heritage Buildings' motion to dismiss [DE-16] counts four, five, six, seven, and eight of Logan Developers' complaint [DE-1]. The motion has been fully briefed and is ripe for ruling. For the reasons that follow, the motion is ALLOWED as to counts five, six and seven and those counts are hereby DISMISSED. The motion is DENIED as to counts four and eight.

## PROCEDURAL AND FACTUAL BACKGROUND

Logan Developers initiated this action on November 9, 2012 by filing a complaint [DE-1] in this court. The complaint alleges claims for copyright infringement, trademark infringement, and state law unfair and deceptive trade practices. In its motion to dismiss, Heritage argues that counts four through eight should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Count four alleges a violation of the Digital Millennium Copyright Act; counts five and six allege claims for false

designation of origin under the Lanham Act; count seven alleges a violation of North Carolina's Unfair and Deceptive Trade Practices Act; and count eight requests a permanent injunction.

For purposes of ruling on a Rule 12(b)(6) motion to dismiss, the court assumes that all well-pleaded factual allegations in the complaint are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The court therefore relates the facts as alleged in Logan's complaint. The court notes that Heritage disputes Logan's version of the facts.

Logan Developers d/b/a Logan Homes ("Logan") designs and constructs residential homes in Wilmington, N.C. and the surrounding communities. Heritage Buildings ("Heritage"), owned by Defendant Vivek Sikka ("Sikka"), is also in the home design and construction business in the Wilmington area and is one of Logan's competitors. Mr. Sikka remains involved in Heritage's day-to-day operations. He meets with prospective clients, participates in the design selection process, and oversees construction operations.

Defendants Robert and Elizabeth Gary ("the Garys") began searching for homes in the Wilmington, N.C. area in 2010. The Garys toured the "Compass Pointe" community, in which Logan Homes at the time displayed models of various home designs. The Garys toured both the "Wrightsville I" and "Ocracoke" models and received brochures describing both models. The Garys allegedly informed sales staff at the Compass Pointe community that they had settled on either the Ocracoke or Marietta (a separate design also owned by Logan) designs. However, the complaint does not allege that the Garys hired Logan to build either model. Logan owns valid copyrights in the Wrightsville I, Marietta, and the Ocracoke designs.

Ultimately, the Garys purchased a lot in the Compass Pointe community and hired Heritage to construct their new home. After construction began in August, 2012, sales staff at

2

Case 7:12-cv-00323-F Document 54 Filed 09/30/13 Page 2 of 17

Compass Pointe notified Logan that Heritage was building an apparent copy of the Ocracoke on the Gary lot. Heritage named the alleged copy the "Southport."

Logan alleges that the Garys obtained the design for the Ocracoke while searching for homes and provided it to Heritage as a model for their prospective home. Instead of licensing the design from Logan, Heritage allegedly copied the design, made minor modifications, and produced the competing Southport and Cambridge designs. In addition to selling the design to the Garys, Heritage also advertised the Southport and Cambridge designs on its website, stamped with Heritage's company seal and copyright information. After Heritage ignored numerous cease and desist letters, Logan initiated this suit.

## MOTION TO DISMISS

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'shp*, 213 F.3d 175, 180 (4th Cir. 2000). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (citations omitted); *see also Iqbal*, 556 U.S. at 678. Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180. The court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" when deciding a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

**B. Lanham Act False Designation of Origin Claims - Counts 5 and 6**

The parties spend the majority of their briefing on Logan's Lanham Act claims. Section 43 of the Lanham Act, 15 U.S.C. § 1051 *et seq.* provides, in relevant part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action . . . .

15 U.S.C. § 1125(a)(1). Interpreting this provision, the Supreme Court has held that "§ 43(a) 'does not have boundless application as a remedy for unfair trade practices.' . . . [It] can apply only to certain unfair trade practices prohibited by its text." *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003) (quoting *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)).

In *Dastar*, the Court considered whether a plaintiff could maintain a § 43(a) Lanham Act claim against a party who obtained a set of videos depicting General Eisenhower's World War II campaigns, copied the videos and made minor modifications, and offered them for sale without attribution to the plaintiff. *Id.* at 31. The plaintiff argued that it was the "origin" of "goods" for

4

purposes of § 43(a) because it produced the original video content, which Dastar copied and resold without attribution. The court held that § 43(a) did not cover such conduct. *Id.* at 37-38. The Court explained,

> reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.

*Id.* at 37. Notably, the Court stressed that *Dastar* was not a case in which a defendant obtained physical goods from a plaintiff, repackaged the unaltered goods, and sold them under the defendant's name. *Id.* at 31. That conduct, the Court explained, would be sufficient to state a false designation of origin claim under § 43(a).

*Dastar*, as Heritage points out, entirely forecloses Logan's Lanham Act claims. This case is virtually identical to *Dastar*. Logan alleges that Heritage obtained a copy of Logan's copyrighted design plan for the Ocracoke home, produced separate physical plans (the Southport and the related Cambridge) which, with some minor alterations, were copies of the ideas and concepts embodied in Logan's Ocracoke plan, and offered the plans for sale without attribution to (or a license from) Logan. There is no allegation in the complaint that Heritage obtained Logan's physical copies of the Ocracoke design, placed its mark on the specific physical document, made no other alterations to the document, and offered the document itself for sale. Under *Dastar*, that is what is required to make out a § 43(a) false designation of origin Lanham Act claim. *Id.* at 37 (explaining the phrase "origin of goods" in § 43(a) refers to "the producer of the tangible goods that are offered for sale"); *Vogel v. Wolters Kluwer Health, Inc.*, 630 F. Supp 2d 585, 591 (M.D.N.C. 2008) ("[S]ection 43(a) does not protect the merely commmunicative

5

aspects of goods apart from the goods themselves."); *Larkin Grp. Inc. v. Aquatic Design Consultants, Inc.*, 323 F. Supp. 2d 1121, 1126 (D. Kan. 2004) ("Even if plaintiff authored some of the ideas and concepts embodied in those [design] proposals, the Lanham Act does not provide protection for such plagiarism . . . ."). Counts five and six allege that Heritage copied the idea for the Ocracoke home embodied in Logan's design, produced an entirely separate and distinct physical plan, and offered it for sale to the Garys without attribution. Logan's remedy for that conduct is in copyright law, not trademark. *Dastar*, 539 U.S. at 37-38; *Vogel*, 630 F. Supp. 2d at 592.

Logan's attempts to distinguish *Dastar* are not convincing. Nothing in *Dastar* suggests that the holding is limited to the precise factual circumstances of the case. In fact, the Court intended to narrow the scope of conduct proscribed by the statute, which suggests the holding should apply in a variety of factual contexts. *Dastar*, 539 U.S. at 29 ("[Section] 43(a) 'does not have boundless application as a remedy for unfair trade practices.' . . . [It] can apply only to certain unfair trade practices prohibited by its text." (quoting *Alfred Dunhill*, 499 F.2d at 237)). By defining the phrase "origin" of "goods" as "the producer of the tangible goods that are offered for sale," *id.* at 37, the Court limited § 43(a) false designation of origin claims to claims based on misappropriation of tangible products. Because the Court provided a specific definition of the statutory language, which significantly limited the scope of the statute, the Court obviously intended that its holding would reach beyond the precise facts presented in the *Dastar* litigation.

Logan also argues that the videos at issue in *Dastar* were in the public domain and thus the *Dastar* holding should be limited to cases where a Defendant copies a work in the public domain. As other courts have noted, however, nothing in *Dastar* suggests the Court's holding

6

was dependent on the fact that Dastar Corporation copied works in the public domain. *See, e.g.*, *Vogel*, 630 F. Supp. 2d at 591 ("[T]he Court's holding in *Dastar* did not turn on whether the work was in the public domain."). Instead, the Court's holding was dependent on the definition of the phrase "origin" of "goods." *Dastar*, 539 U.S. at 31. As explained, that phrase is defined as "the producer of the tangible goods . . . offered for sale." *Id.* at 37. That is undoubtedly Heritage in this case, who allegedly incorporated Logan's intangible ideas regarding the Ocracoke home design into its Southport plan and produced a separate physical good (the Southport Plan). *See Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 572 (E.D. Va. 2004) ("To state [a claim under § 43(a)], Tao must allege that the actual goods provided to NASA by AS&M were in fact produced by Tao, or the actual services provided to NASA by AS&M were in fact performed by Tao."). Because Logan is not the "origin of goods" for purposes of § 43(a) under the facts alleged in the complaint, Logan's Lanham Act claims fail to state claims upon which relief can be granted.

Logan also cites a number of cases in which a plaintiff was allowed to simultaneously maintain a Lanham Act claim and a copyright claim. However, these cases are no help to Logan. All of the cited cases involved defendants either obtaining a plaintiff's physical products and selling those products under the defendant's name or falsely representing that the defendant's products were produced by the plaintiff. *See, e.g.*, *Universal Furniture Int'l Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 437-38 (4th Cir. 2010) (allowing § 43(a) Lanham Act claim and copyright claims to proceed because defendants "[marketed] actual pieces [of the plaintiff's furniture] as its own furniture . . . ."); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. MJG-06-2662, 2011 WL 4596043, at *12 (D. Md. Sept 30, 2011) (allowing § 43(a) Lanham Act claims to

proceed because "[the plaintiff] is not claiming that the products at issue are the [similar design drawings] created and sold by [the defendant]. Rather, [the plaintiff] claims that the products at issue are the technical drawings, and [the plaintiff] is the source of the technical drawings. The evidence showed, in numerous instances, that Defendants downloaded the drawings from the VSI product library, removed the [plaintiff's] source information and product name from the drawings, replaced the source information with representations that [the defendant] had created the drawings, and replaced the [plaintiff's] product name with [the defendant's] product name"); *Gen. Scientific Corp. v. SheerVision, Inc.*, 10-CV-13582, 2011 WL 3880489, at *3 (E.D. Mich. Sept. 2, 2011) ("Here, Plaintiff's Lanham Act claim can coexist with its copyright claim for the concomitant reason: Plaintiff alleges that SheerVision misrepresented the origin of Plaintiff's [physical] goods, a photograph and a video."); *Oldcastle Precast, Inc. v. Granite Precasting & Concrete, Inc.*, No. C10-322MJP, 2010 WL 2217910, at *3 (W.D. Wash. June 1, 2010) ("Plaintiff alleges Defendant intentionally used the same part number system with regard to [tangible] precast items to confuse potential customers into thinking they were Plaintiff's products.").

None of these cases involved conduct similar to what is alleged here: that Heritage obtained Logan's copyrighted home design, incorporated the ideas/concepts of the design into separate physical designs (the Southport and the Cambridge), and then sold the new design to the Garys. As explained above, under *Dastar*, that conduct is not cognizable as a § 43(a) Lanham Act claim. *Dastar*, 539 U.S. at 37.

Logan also cites to *Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1998), a pre-*Dastar* opinion with facts arguably similar to what is alleged in this case. In *Johnson*, the plaintiff alleged two

separate acts of infringement: (1) the defendant traced the plaintiff's home design drawings and then used the traced document as the design plan for the home; and (2) the defendant obtained a set of the plaintiff's designs, placed his name and professional seal on the drawings, and passed them off as his own work to the city building inspector. *Id.* at 497-99. The plaintiff brought both copyright infringement and § 43(a) Lanham claims and the district court allowed both claims to proceed. *Id.* at 497. The Sixth Circuit affirmed, explaining, "the defendant has taken the plaintiff's product and has represented it to be his own work. It is difficult to imagine how a designation of origin of a product could be more false, or could be more likely to cause confusion or mistake as to the actual origin of the product." *Id.* at 503. Logan argues that *Johnson* is still "viable" post-*Dastar* and that *Johnson* supports Logan's position that its Lanham Act claim can proceed.

The court agrees that *Johnson* remains viable post-*Dastar*, but not for the reasons Logan advances. *Johnson* remains viable for the same reason nearly every case Logan cites in its brief remains viable: in *Johnson,* the defendant placed his own name and copyright information on the plaintiff's unaltered products and passed those products off as his own. That conduct is actionable under § 43(a). *Dastar*, 539 U.S. at 29. As the court has explained, Logan does not allege that Heritage placed its name and copyright information on Logan's physical plans. To the extent *Johnson* may stand for the idea that a § 43(a) Lanham Act claim is viable where a defendant copies the ideas/concepts from a plaintiff's designs into his own work and produces a separate, altered product, that theory is entirely foreclosed by *Dastar*.

Thus, pursuant to *Dastar*, Logan's Lanham Act claims are not cognizable under § 43(a). Thus, counts five and six are DISMISSED WITH PREJUDICE.

9

## C. Unfair and Deceptive Trade Practices Claim - Count 7

Heritage also moves to dismiss count 7, which alleges a violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ("UDTPA"). Heritage argues that Logan's claim is preempted by the Copyright Act, 17 U.S.C. § 101 *et seq.* The court agrees.

Section 301(a) of the Copyright Act provides for preemption of certain state law claims:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 [of the Copyright Act] in works of authorship that are fixed in a tangible medium of expression . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301. Preemption is appropriate where (1) "'the work is within the scope of the subject matter of copyright as specified in 17 U.S.C. §§ 102, 103'" and (2) "'the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106.'" *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 229 (4th Cir. 1993) (quoting *Ehat v. Tanner*, 780 F.2d 876, 878 (10th Cir. 1985)); *SAS Inst. Inc. v. World Programming Ltd.*, 5:10-CV-25-FL, 2012 WL 5844910, at *14 (E.D.N.C. Oct. 18, 2012), *repot and recommendation adopted*, 5:10-CV-25-FL, 2012 WL 5844899 (E.D.N.C. Nov. 19, 2012).

Logan argues that its UDTPA claim is not equivalent to any exclusive right granted by the Copyright Act. The Fourth Circuit has adopted the "extra element test" for assessing the equivalency requirement: "'if an 'extra element' is required instead of or in addition to the acts of reproduction, performance, distribution or display [the state claim may be preempted]' provided that 'the extra element changes the nature of the action so that it is *qualitatively* different from a

copyright infringement claim.'" *Rosciszewski*, 1 F.3d at 229-30 (quoting 1 Melville B Nimmer & David Nimmer, *Nimmer on Copyright* § 1.01[B], at 1-14 to 1-15 (1992) and *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985)). North Carolina's UDTPA statute does not require an extra element "instead of or in addition to" the elements needed to make out a copyright claim. *Pan-American Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 698 (M.D.N.C. 2011); *SAS Inst.*, 2012 WL 5844910, at *14. Because the UDTPA covers a broad range of deceptive and unfair conduct, however, the courts will often look to the facts underlying the UDTPA claim to determine whether it is "qualitatively different" than a plaintiff's copyright infringement claim. *Pan-American*, 825 F. Supp. 2d at 698.

Specifically, the UDTPA claim must be supported by factual allegations that demonstrate "misconduct separate from, and not controlled by, the Copyright Act." *Id.*; *see also Innovative Med. Prods., Inc. v. Felmet*, 472 F. Supp. 2d 678, 683 (M.D.N.C. 2006). If the underlying conduct involves significant misrepresentation, deception, abuse of a confidential relationship or palming off, the claim is generally not preempted because it is qualitatively different than the copyright claim. *Pan-American*, 825 F. Supp. 2d at 698; *Innovative Med. Prods.*, 472 F. Supp. 2d at 683; *SAS Inst.*, 2012 WL 5844910, at *14. Particularly significant here, where a defendant wrongfully obtains copyrighted material by abusing an existing relationship and subsequently misappropriates the material, the courts have found the UDTPA claim is not preempted. *Pan-American*, 825 F. Supp. 2d at 698-700 (explaining UDTPA claim survives preemption where defendant obtained copyrighted material by falsely promising to use the material pursuant to a contract with the plaintiff and subsequently misappropriated the material); *Baldine v. Furniture Comfort Corp.*, 956 F. Supp. 580, 587 (M.D.N.C. 1996) ("False representations made by [the

11

defendant] for the purpose of obtaining [plaintiff's] design with intent to use it without paying for it would constitute a viable claim under [the UDTPA] since the fraud and not the actual copyright violation would be the gravamen of the claim.").

Logan argues that *Baldine* and *Pan-American* preclude preemption in this case because Heritage allegedly fraudulently obtained Heritage's copyrighted material and misappropriated that material when it sold the Southport design to the Garys. Logan omits a critical fact which, in the court's estimation, significantly distinguishes this case from *Baldine* and *Pan American*. In both *Baldine* and *Pan-America*, the defendants (allegedly) obtained the copyrighted material by deceiving a party with which the defendants had an existing relationship. That arguably makes the UDTPA claim qualitatively different than the copyright claim.

In this case, Logan and Heritage did not have a pre-existing relationship that Heritage abused in an effort to wrongfully obtain the copyrighted material. Logan voluntarily gave the Garys the design plan for the Ocracoke home. The Garys then allegedly provided the plan to Heritage and Heritage copied the plan.[1] Logan does not allege that Heritage abused an existing relationship with Logan to gain access to the Ocracoke plan and then misappropriate Logan's designs. That is the "extra element" which made the UDTPA claims qualitatively different than the copyright claims in both *Baldine* and *Pan-American*. *Pan-American*, 825 F. Supp. 2d at 698-700; *Baldine*, 956 F. Supp. at 587. Instead, Logan alleges that the Garys provided Heritage with a copy of the Ocracoke design, which Heritage used to produce the Southport design. That is a

---

[1] The Garys are not named in the UDTPA claim, nor could Logan maintain a UDTPA claim against the Garys. A UDTPA claim may not be maintained against an individual unless that individual is "engaged in a business, a commercial or industrial establishment or enterprise." *Rosenthal v. Perkins*, 42 N.C. App. 449, 454, 257 S.E.2d 63, 67 (1979).

12

classic copyright claim. Other than copying Logan's design, the complaint does not allege that Heritage engaged in any additional deceptive conduct that would make Logan's UDTPA claim "qualitatively different" than Logan's copyright claims.[2] *See Vogel*, 630 F. Supp. 2d at 593-95; *Collezione Europa U.S.A. v. Hillsdale House, Ltd.*, 243 F. Supp. 2d 444, 450 (M.D.N.C. 2003). Thus, Logan's UDTPA claim is preempted by § 301(a) of the Copyright Act and it is also DISMISSED WITH PREJUDICE. 17 U.S.C. § 301(a); *Rosciszewski, Inc.*, 1 F.3d at 229-30.

**D. Logan's DMCA claim (count 4)**

Heritage also moves to dismiss count four, which alleges a violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1201 *et seq*. Specifically, count four alleges that Heritage contravened § 1202(a)(1), which provides: "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement . . . (1) provide copyright management information that is false." *Id.* The phrase "copyright management information" refers to

> any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, . . . (1) [t]he title and other information identifying the work, including the information set forth on a notice of copyright[;] (2) [t]he name of, and other identifying information about, the author of a work[;] [and] (3) [t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.

17 U.S.C. § 1202(c)(1)-(3).

---

[2] The complaint does allege that Sika visited various models of Logan's homes without the Garys and obtained the Ocracoke design during those visits. Compl. [DE-1] ¶¶ 35, 36. While this conduct is arguably deceptive, because, presumably Sikka did not explain to the sales managers that he owned a competing construction firm, an additional allegation of deception, standing alone, is generally not sufficient to avoid preemption. *Vogel*, 630 F. Supp. 2d at 594. This deceptive conduct, in the court's estimation, simply is not sufficiently serious to make the UDTPA claim qualitatively different than the copyright claim. *Rosciszewski*, 1 F.3d at 229-30.

Heritage's first argues that count four fails to provide sufficient factual allegations to support a § 1202(a)(1) claim. As explained above, the Supreme Court and the Fourth Circuit require that the complaint contain sufficient factual material, accepted as true, "'to raise a right to relief above the speculative level' and the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted); *see also Iqbal*, 556 U.S. at 678. Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts.*, 213 F.3d at 180.

Count four alleges that Heritage placed false copyright management information on Heritage's "Southport" and "Cambridge" plans, as well as the Gary House design. Compl. [DE-1] ¶¶ 115-27. Heritage argues that Logan's complaint fails to provide sufficient factual support regarding whether it acted with the "intent to induce, enable, facilitate, or conceal infringement" and whether the copyright management information was false, as required by § 1202(a)(1). While the court agrees that the allegations listed under count four of the complaint are mostly legal conclusions and thus insufficient to state a DMCA claim, the court also agrees with Logan that the factual support for this claim is found in other portions of the complaint.

The court has reviewed the "general allegations" portion of the complaint, which recites most of the factual allegations that form the basis of all of Logan's claims. That section alleges

14

the following: (1) Heritage obtained copies of Logan's copyrighted plan for the Ocracoke home, copied the plan with slight alterations and created the Gary House, the Southport and the Cambridge design plans, Compl. [DE-1] ¶¶ 30-40, 43, and (2) Heritage placed its name on the (infringing) Southport, Cambridge, and Gary House designs and advertised the Southport and Cambridge designs on its internet website, Compl. [DE-1] ¶¶ 41-45.

The court finds that this is sufficient factual support to state a claim under § 1202(a). While it is true that Logan does not use the precise statutory language "intent to induce, enable, facilitate, or conceal infringement" or "false copyright management information," the obvious implication of these factual allegations is that Heritage, with the intent to conceal its infringement, placed its name on works that infringed Logan's copyrights and displayed at least two of the infringing designs (the Southport and the Cambridge) on the internet. At this stage of the proceedings, that is all that is required. *Twombly*, 550 U.S. at 570 (explaining the complaint must include "enough facts to state a claim to relief that is plausible on its face.").

Heritage also maintains that count four should be dismissed as to the Gary House design because there is no allegation in the complaint that the Gary House design was ever advertised on the internet. Some courts have imposed the requirement that a § 1202(a)(1) claim must include factual allegations that connect the work on which the false copyright information is placed "to the internet, electronic commerce, automated copyright protections or management systems, public registers or other technological measures . . . as contemplated in the DMCA as a whole." *Textile Secrets, Int'l, Inc. v. Ya-Ya Brand, Inc.*, 524 F. Supp. 2d 1184, 1201 (C.D. Cal. 2007); *Brown v. Stroud*, No. C08-02348JSW, 2011 WL 2600661, at *5 (N.D. Cal. 2011). Other courts, relying on the statutory language "including in digital form" in § 1202(c)'s definition of

15

copyright management information, have found that a plaintiff is not required to plead facts tying the work to some form of technology because the statute specifically contemplates non-digital works. *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 306 (S.D.N.Y. 2011); *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010).

The court agrees with the *Morel* and *Faulkner* courts that the statutory language allows for claims where a plaintiff intentionally places false copyright management information on a work that is not tied to the internet or some other technological medium. Requiring such a connection would contravene the plain language of the statute, which defines copyright management information as "any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, *including in digital form*, . . . ." 17 U.S.C. § 1202(c) (emphasis added). The phrase "including in digital form" means this section of the statute is not limited to works connected to a technological medium. Thus, Heritage's motion to dismiss count four is DENIED.

### E. Claim for Permanent Injunction (count eight)

Heritage also moves to dismiss count eight, which requests a permanent injunction and is listed as a "cause of action." Heritage argues that a permanent injunction is a remedy, not a separate cause of action, and should therefore be dismissed from the complaint. Logan concedes as much, characterizing the claim as "relief prayed [for] by Logan Homes [which is] linked to its causes of action under the Copyright Act and the Lanham Act." Logan Resp. [DE-21] at 28. So long as both parties recognize count eight as a request for relief based on the preceding claims, the court does not see a need to dismiss the claim at this stage. Logan is specifically advised, however, that if it is successful on the merits on any of the remaining claims, Logan will need to

16

Case 7:12-cv-00323-F   Document 54   Filed 09/30/13   Page 16 of 17

file a separate, properly-supported motion for injunctive relief. Logan will not be allowed, for example, to argue that it is entitled to a permanent injunction solely on the basis that it requested that relief in the complaint.

Finally, Logan also requests the "reasonable attorneys' fees and costs" associated with defending Heritage's motion to dismiss. *Id.* at 30. Logan makes no showing as to why it is entitled to attorney's fees or costs. In light of the fact that Heritage's motion was largely successful, the court sees no basis for awarding attorneys' fees and costs to Logan. Logan's request is therefore DENIED.

## CONCLUSION

For the foregoing reasons, Heritage's motion to dismiss [DE-16] is ALLOWED in part and DENIED in part. The motion is ALLOWED as to counts five, six and seven and those counts are hereby DISMISSED WITH PREJUDICE. The motion is DENIED as to counts four and eight.

SO ORDERED.

This the 30th day of September, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge